## D. L. HORTON v. THE STATE.

1—See this case for an indictment held sufficient in a prosecution for the forgery of a note payable in trade.

2—It is not necessary that the indictment should contain averments showing how the false instrument would, if true, create, increase, diminish, discharge, or defeat any pecuniary obligation; or would transfer or affect any property whatever. These are deductions of law, not necessary to be averred.

3—The fact that no internal revenue stamp was affixed to the instrument alleged to be forged, is immaterial. The crime is not incomplete because no stamp has been affixed.

4—See this case for evidence held to be inconclusive of the guilt of the accused.

APPEAL from Wood. Tried below before the Hon. Winston Banks.

The indictment charged that on the 23d of June, 1868, " in the county of Wood, ·in the State of Texas, with force and arms, one D. L. Horton, late of said county, without lawful authority, and with intent to defraud, willfully, feloniously, and falsely did make a certain false instrument in writing, purporting to be the act of A. D. Renshaw; which said false instrument is as follows, that is to say:

' For value received, on or before the first day of December next, we or either of us promise to pay Mr. Crattic, or order, the amount of fifteen bushels of corn. This June 23d, 1868.

' Sureties,          ' D. L. HORTON,

               ' A. D. RENSHAW.'

Said instrument, with the name of D. L. Horton on the back, and that the said D. L. Horton then and there feloniously and falsely did make said false instrument with the felonious and fraudulent intent to defraud, contrary," etc.

The cause came to trial at the November term, 1868, and being found guilty, his punishment was assessed by the jury at two years in the penitentiary. The important portions of the evidence appear sufficiently in the opinion of the court.

Defendant's motions for a new trial and in arrest of judgment being overruled, he appealed.

*Robertson & Herndon*, for the appellant.

*W. H. Andrews*, Acting Attorney General, for the State.

The only question, worthy of special notice, is as to the sufficiency of the indictment.

If the instrument in writing, set out in indictment, showed a proper stamp of internal revenue, legally canceled, there could be no question.

By comparing the common law definition of forgery, 4 Blac. Com., 247; Wharton's Crim. Law, § 1418, 4th ed.; 2 Russell on Crime, marginal, 318, with the definition in our

Criminal Code, P. D., Art. 2093, it will be seen that those definitions are the same, in substance, so far as it is necessary to render the common law authorities applicable in this investigation.

It has been held that one might commit a forgery, in England, upon *unstamped* paper while the Stamp Acts of 22 Geo. 3, C. 33, 23 Geo. 3, etc., were in force. (2 Rus. on Cr., marginal, 346-7.)

There is greater reason to hold here now that this is forgery than that forgery could be committed upon unstamped paper in England during the existence of her stamp acts, because there was no provision in those acts whereby the holder of an instrument upon unstamped paper could procure a stamp to be affixed, as is the case in our Stamp Act. (Statutes at Large, vol. 14, p. 143, 2d and 3d provisos.)

The "making" of a forged instrument is complete without the affixing of the proper stamp. (Statutes at Large, vol 14, p. 143, 2d and 3d provisos.)

The ruling of the court, admitting said instrument in evidence, is clearly right, if the indictment is good, as above contended.

But if said ruling were wrong, it has not been brought to the knowledge of this court in such manner as would authorize its revision.

LINDSAY, J.—This was an indictment for an alleged forgery, of the following instrument in writing, by the defendant:

"For value received, on or before the first day of December next, we, or either of us, promise to pay Mr. Crattic, or order, the amount of fifteen bushels of corn. This June 23d, 1868.

"Sureties.                                 "D. R. HORTON,

"A. D. RENSHAW."

Upon the trial it was proved by the co-obligor, A. D. Renshaw, that he neither signed said instrument in writing, nor did he authorize any one to sign his name to it; that he had seen the note in the hands of the payee, Crattic, who had de-

manded payment of him; that he was familiar with the handwriting of D. L. Horton, and believed that the body of the note and the name of D. L. Horton was in the handwriting of the defendant; but that he could not and would not say that the name "A. D. Renshaw," thereto signed, was in the defendant's handwriting; that it was not in the style of his handwriting; that the payee, Crattic, had died three weeks before the trial. The rest of the proof introduced was to show that the defendant had gotten ten bushels of corn from Crattic, for which the defendant was to pay him fifteen bushels. This is all the proof of the making of the false instrument in writing, by the defendant, without lawful authority.

The indictment charges that the defendant, on the day and date mentioned in the above writing, without lawful authority, and with intent to defraud, made this false instrument in writing, purporting to be the act of another, and sets forth the instrument alleged to be false. If the facts alleged were true, they embrace all the requisites of the crime of forgery, as defined by the statute. It sets forth an alleged "false instrument in writing," made "without lawful authority," "purporting to be the act of" "A. D. Renshaw," "with intent to defraud;" containing every element in the definition of forgery by the Code. The construction of the false instrument charged, by the rules of law, is to determine, whether the false instrument, if true, would create, increase, diminish, discharge or defeat any pecuniary obligation, or would transfer or affect any property whatever. It is needless to charge in the indictment, how these *results* would be accomplished by the false instruments in writing. These are deductions of law, to be made in construing the false instrument, according to the principles of law. The indictment is therefore sufficient to put the accused upon his defense; and if facts were introduced to sustain all the allegations in the indictment, they would fix the guilt upon the party, unless countervailed by exculpatory proof on the part of the defense. The objection to the indictment is not well taken.

It is assigned as error that the court, upon the trial, admitted the note charged to be forged to be submitted to the jury as evidence, when it had no internal revenue stamp upon it. By comparing the definition of forgery in the Code with the com. mon law definition, it will be found that those definitions are substantially the same, and the decisions upon the questions of unstamped paper, as instruments of evidence in common law courts, may elucidate the matter under consideration. It has been decided in England that forgery upon unstamped paper may be committed, *non obstante* the Stamp Acts of the 22 Geo. III. (See 2 Russell on Crimes, 346–7, margin.) In England there was no provision in the statutes for affixing the stamp to an unstamped paper by the holder. By the statutes of the United States there is such provision. If, without such provision, forgery can be committed upon unstamped paper there, in the judgment of enlightened jurists, *a fortiori*, with such a provision in the law, it may be done here—construing the penal statutes of the State of Texas, as the court is authorized to do, in the light of the common law. The "making" of a forged instrument, with the criminal intent, is complete, without the affixing of the proper stamp. (Statutes at Large, vol. 14, page 143, 2 and 3 provisos.) Neither is this objection well taken.

The final and substantive objection is, that the evidence adduced on the trial was not sufficient to establish the guilty "making" of the false instrument. In this the court thinks the objection to the verdict and judgment is well taken. There are several reasons why the evidence upon the trial was insufficient to establish the guilt of the accused. There is no proof whence the false instrument offered in evidence was obtained. It is true the witness says it was once presented to him by the payee for payment. But the payee was dead at the time of the trial. There is no proof showing, beyond doubt, that the name of the witness, "A. R. Renshaw," might not have been affixed to the instrument after its execution by the accused, and after it had passed from his hands; or that it may not have

been taken from the maker before he had consummated his purpose of procuring the signature of a co-obligor before delivery. The doubt in this regard is greatly augmented when taken in connection with the statement of the witness, that, although the body of the instrument and the name of the defendant is in the handwriting of the defendant, yet he would not, and could not, say that the signature of his name to it was in the handwriting of the defendant. There is neither such positive proof, nor was there such circumstantial evidence, adduced upon the trial as would exclude another hypothesis perfectly consistent with the facts of the case, and with the innocence of the party charged with the forgery.

It is, therefore, considered by the court that the judgment be reversed and the cause remanded.

Reversed and remanded.